By the Court.
Oakley, Ch. J.
We see no reason for dissenting from the finding of the Judge at Special .Term upon the questions of fact that he was required to decide. We think his decision was fully sustained by the evidence before him.
The cause, therefore, turns entirely upon the question of law, what is the construction of the agreement of August, 1848, which, in order to carry into effect the intention of the parties, as collected from the terms of the agreement and the circumstances under which it was made, we are bound to adopt? This question we have fully considered, and we are all satisfied that the true and reasonable construction of the agreement is that which was given to it by the counsel for the plaintiff, and, consequently, that it will be our duty to affirm the judgment that he has obtained.
It seems to us that the meaning of the agreement, judging from its terms and its object, was plainly this, that if the plaintiff should procure, as he had.undertaken to do, in a suit to be instituted by him for that purpose, a judicial determination establishing that the seeds mentioned in the agreement were not chargeable with the duties which the Collector was then exacting, the importing merchants who signed the agreement would allow and pay to Mm one-third of the sums which, in consequence of such a determination, should be received by them -respectively from the Treasury Department, as a return of duties that, at any time, previous to such return had been illegally exacted from them; and we agree with the counsel for the plaintiff, that we are bound to presume that the agreement was made-with a full knowledge of the provisions of the various acts of Congress, by wMch. the powers and duties of the Treasury Department in relation to the 'return of duties are regulated and defined. A suit was to be-instituted for the purpose of establishing a principle, that the Treasury Department might elect, or would be bound to -follow, and the agreement was meant to embrace every sum that the principle thus established, might induce or compel the head of the Department to refund. Should he choose to abide by a determination in a circuit court against the practice that had prevailed, the *282 return -of duties would be an exercise of bis ■ discretion; should he suspend his action until a final determination in the Supreme Court of the United States, it would then become a positive duty, but in either case the return of duties, at whatever time they had been previously exacted, would be equally a consequence of the judicial determination which the plaintiff, at his own risk and expense, undertook to procure, and would therefore entitle him to a proportional share of the benefits which, through his means, and by his exertions, the importers who signed the agreement would be enabled to secure. The words, therefore, “ recovered by us respectively,” as used in the agreement, are not to be understood in their strict technical sense, as confined to a recovery by judgment, thus limiting the compensation of the plaintiff to one-third of the sums for which judgments should be rendered, and imposing upon him the necessity, in order to secure the reward for which he stipulated, of instituting as many separate suits, and obtaining as many separate judgments, as there were parties, by whom respectively the agreement was signed. It is manifest, that when the agreement was signed, but a single suit was contemplated by the parties as necessary or proper to be instituted, and that, for the plain reason, that it was known to them all that a favorable determination, in a single suit, would be sufficient to establish the principle for which they contended, and entitle them to a return of duties that had been, or might be, illegally exacted. Let the word “ received” be substituted for “ recovered,” and the agreement is at once freed from ambiguity, and, as it seems to us, the right of the plaintiff to retain his judgment made apparent. It cannot be denied that the sum of which the one-third has been adjudged to the plaintiff, was received by the defendants as a return of duties exacted from them under the tariff act of 1846, upon their importation of the seeds mentioned in the agreement; and it is equally clear, that it was by the efforts of the plaintiff in the faithful performance of his undertaking, that this return was secured to them. It is covered, therefore, alike by the words and the spirit of their agreement. We are indeed convinced, that if there was any error in the judgment of the court at Special Term, it was an error in favor of the defendants, by not allowing to the plaintiff one-third of the sum .which was paid for duties by the defendants, on the 18th January, *283 1851, and refunded to them on the 14th of February, in the same year. The propriety of the distinction that has been made between duties paid before, and those paid after - the judgment in October, 1850, we think may be seriously doubted.
The claim of the defendants, to recover from the plaintiff $172 of the moneys collected by him on the judgment in their favor against the Collector, assumes that by their agreement he was entitled to retain one-third only of those duties that had been exacted from them before the date of the agreement, and as we have rejected this construction of the agreement, it is of course disallowed. Another objection was stated to this claim that seems equally fatal. When the defendants received the residue of the proceeds of the judgment against the Collector from the plaintiff, they permitted him to retain without objection the sum which they now demand. Their doing so was equivalent to a voluntary payment, which, when made with a full knowledge of facts, can never be recovered back.
An objection to the plaintiff’s recovery, and, therefore, a ground for the reversal of the judgment in his favor, was strongly urged upon the argument before us, that is not raised by the pleadings, and does not appear to have been taken in the court below, namely, that the agreement upon which the action is founded is, upon its face, illegal and void for champerty. The objection is not destitute of plausibility, but in our opinion, without adverting to other considerations, it is sufficiently refuted by that construction of the agreement which we have adopted.
It may be true, notwithstanding the doubts that seem recently to have been expressed by a learned Judge in the Court of Appeals, (Hoyt v. Thompson, opinion Paige, J.; 1 Selden, 347,) that the common law doctrine of champerty is still in force, and that it is just as applicable to agreements for the recovery of money in personal actions as to those for the recovery of land in real; but when we remember that the doctrine had its origin in a state of society widely different from our own, and was adapted to meet evils that no longer exist, we cannot believe that it ought to be extended by construction beyond the eases which its definition, in its strictest sense, is found to embrace. Now the only cases which this definition, in its proper terms embraces, are those in which the person who at his own expense and risk carries on *284 a suit in tie name of another, is to receive for his compensation a certain share of the avails of the suit, that is, (when the suit is for money,) of the sum" for which a judgment is sought to be obtained. (2 Black, Com.,. 1 Bouvier’s Law Dictionary, 218.) Hence, if the imputation of .champerty is applicable, at all, to the agreement, of the parties before us, which we do.not assert, it applies only to the .moneys that it was expected would be, and which in fact were, collected in the suit against the Collector, and not at all to the duties, which as illegally exacted, it was expected yrould be, and which in the result were, .returned, without suit, by the Treasury Department, and it .is to such returned duties alone that the present action relates. Had the agreement contained no mention of a suit, but had promised a compensation to the plaintiff-only from the duties that by argument or solicitation he might prevail upon the head of the treasury to return, no one, .probably would have asserted, or supposed, that, it was liable to the imputation of champerty, but such -in reality is the -substance of .the agreement,- with the exception of the singlesuit which the plaintiff undertook to institute.. This exception may perhaps have had the effect of rendering void- at common law that part of the agreement in which it is found, but, according to a -well-known distinction, it could not have the effect of vitiating the residue of the agreement.
The moneys collected -in .the suit against the Collector-having been voluntarily paid, cannot be recovered back, and those which the plaintiff now seeks to recover, the defendants, by their agreement, are bound to pay.
The judgment against them must therefore be affirmed with costs.